Good morning. Welcome to everyone. Our first call, first case on the call of the DACA today, Tuesday, November 13, 2012, is agenda number one, case number 112, 734, People v. Ronnie Grant. Counsel for the appellant, please proceed. Good morning, your honors. Counsel, may it please the court. My name is Kathy Warnick and I represent the people of the state of Illinois. At 11 p.m. on patrol on the 5th Avenue in Chicago, the police observed the defendant standing at a location known to them as the weed spot because of its high volume narcotic sale, yelling the words, dro, dro, slang for a certain type of cannabis to a passing car. The defendant was arrested for the Chicago Municipal Ordinance violation of solicitation of an unlawful business. Custodial arrests performed after the arrests, excuse me, custodial searches revealed suspect cannabis and suspect cocaine. Prior to trial, the defendant filed a pre-trial motion to quash arrests and suppress evidence, which was denied by the trial court. However, on appeal, the appellate court reversed the trial court's decision. The appellate court found that there was no probable cause to arrest. The issue before this court is, therefore, whether the defendant was arrested based on probable cause. Of course, probable cause exists when the facts known to the officer at the time of the arrest would lead a reasonably cautious person to believe that an offense has been or is being committed. In this case, based on the United States Supreme Court case of Atwater v. City of Largo Vista, there is absolutely no question that the Chicago Municipal Ordinance at issue was an arrestable offense. In fact, the defendant on appeal concedes that the Municipal Ordinance violation is an offense for which an arrest can be made. Therefore, really this case becomes a factual one. The defendant was arrested for the Chicago Municipal Ordinance violation of solicitation of unlawful business, which states no person may stand on a public way and solicit unlawful business. Now, not only does the statute tell us that, but in addition, the statute specifically talks about types of unlawful businesses and says that the sale of illegal narcotics is one of them. In addition, the statute defines solicitation. And what else did the defendant do, actually, other than yell, drow, drow? Did he, for instance, did he go up to the cars? Yes, he yelled, drow, drow, in the direction of the passing vehicle, which was two vehicles in front of the officers who were observing him from a distance of 25 feet. And what were they driving? A marked squad car? They were driving an unmarked squad car. They were on a narcotic surveillance mission, and they were behind him. Any foundation laid as to establishing the officer's experience? Yes, there was. Yes. And so the ordinance says that you may solicit, importantly, by words alone. And the officer testified that he observed the defendant from 25 feet, yelling the words, drow, drow, to a passing vehicle. But the importance of this case is the officer's testimony. The officer testified that he had made hundreds of narcotics arrests, not only in that area, but at that same location. He testified that it was known as the weed spot. He testified that he was familiar with terms about narcotics. And he testified that in his three years as a police officer, he had learned that the term, drow, drow, was referring to a specific type of chemical. Did the defendant testify that, or it was established, I thought, that drow also is a slang term used by inmates? And if there is also a non-criminal connotation to the term that the defendant used, shouted out, once a car was passed, doesn't that kind of weaken your argument regarding probable cause if drow has another meaning in another setting? Not at all. The officer testified that prior arrestees, I believe it was arrestees, had told him that the word drow, drow meant a specific type of cannabis. He testified he was familiar with terms and types of cannabis. And in addition, his testimony at trial was unrebutted. There was no contrary evidence introduced at trial. There was nothing to contradict him. And therefore, at the end of the ‑‑ There was no evidence that drow was a term that was used by prisoners? There was evidence presented by the state that drow, drow was a term that the officer knew the term because it was told to him from prior arrestees as having that meaning. That was the only evidence in the record about the term drow, drow. At the conclusion of the pretrial hearing, the trial judge actually reviewed the testimony, he reviewed the officer's experience, and he concluded that the officer was credible. Now, despite that credible evidence in the record establishing probable cause, the appellate court reversed. And the appellate court reversed based on a sufficiency of the charging document analysis, which even my opponent suggests cannot hold water in this case. Was any drow found in his possession? Excuse me, Your Honor, I didn't hear the question. Any marijuana found in his possession? Yes, there was marijuana found. There was a custodial search at the scene where suspect marijuana was recovered and a further custodial search at the station where suspect cocaine was recovered. Could the police have jumped the gun here and shouldn't they have done a Terry stop after the defendant uttered the slang term? Not at all. They saw him committing an offense. Solicitation of unlawful business is an offense. And when they saw him yelling the words drow, drow, the statute clearly tells us that drow, drow, or that, excuse me, the statute can be accomplished by mere words. There is absolutely no need to wait further. And as a matter of fact, perhaps the defendant would not have been found with drugs on him. That would have not lessened the probable cause analysis in this case in any way. Police still would have had probable cause. The standard on review is was the trial court's decision manifestly erroneous? Was the defendant charged with the ordinance? Yes, he was. And as a matter of fact, in their analysis of the sufficiency of the complaint, the appellate court states that there is no complaint lodged for, excuse me, solicitation of unlawful business. And in fact, there was. There was a complaint initially lodged. He was not eventually prosecuted for that, but yes, a complaint was initially lodged. Would reversing the appellate court significantly lower the threshold required to prove probable cause in subsequent cases? Excuse me, can you repeat the question? If reversing the appellate court, if we do, would it significantly lower the threshold required to prove probable cause in subsequent cases? Not at all. The question is what is the offense for which probable cause is required? In this case, we are not talking about probable cause for possession, for delivery, for possession with intent to deliver. We are talking about probable cause for the municipal ordinance. And the officer saw that crime being committed. Therefore, it does not affect in any way, shape, or form. Those are different questions for different cases. In this case, we are simply talking about probable cause for the municipal ordinance. Based on the record, there is simply no way that the appellate court could have found that the trial court's decision was manifestly erroneous. The people would therefore ask that this court reverse the appellate court's decision and affirm the trial court's ruling. Thank you. Thank you, Ms. Bornick. Counsel for the appellee. Good morning, Your Honors. Counsel. May it please the Court. My name is Brian McNeil. I represent Ronnie Grant. And there is really only one question for the Court, as Counsel stated, and that is whether there was probable cause in this case. Whether uttering two words to a single passing car in a high crime area allowed the officers to execute a full-blown arrest and search in this case. The answer here is no. There may have been reasonable suspicion, but there was not probable cause. If the two words were marijuana for sale or three words, would that be different? I think it might be slightly different. If you couple it with for sale, I think that makes it much more likely that we are having a solicitation situation that the State is talking about. So if you're saying marijuana, marijuana would not be enough. I think if a guy just screams out marijuana, marijuana, maybe the officers are entitled to be suspicious. And they're entitled to pay some attention to what that guy is doing. But I don't think that that's the end of the story right there. I don't think that establishes this offense. And I don't think it establishes probable cause because it's just too ambiguous without further indication of actual criminal behavior. You just have these words and that's it. Would that be enough for a Terry stop? I think it would probably be close to enough for a Terry stop. I think the most important thing is... Consider them into the totality of the circumstances. You have him saying, Dro, Dro. He's in a high crime area. And you have the officer testimony regarding Dro. However, that's not the end of the story. The probable cause is the totality of the circumstances inquiry. And that means the officers have to consider everything that's going on in this case. And that means, quite significantly, he only says Dro, Dro to a single passing car here. Now, the officer testified. There were other cars in the area. There were pedestrians in the area. Mr. Grant doesn't say anything to any of these people. Now, if you have repetition of it, then you're getting closer to the Neal case the state relies on. Then it's much less likely that you have an ambiguous or innocent explanation for what Mr. Grant is doing. But that's not what we have here. Assuming that we disagree that the for sale is necessary and we see Dro as being a solicitation, are you saying there has to be more than one solicitation under the ordinance? Not necessarily, Your Honor. I think, again, it's totality of the circumstances. And I think the fact that there's only one shouting of Dro, Dro makes it ambiguous. If he's shouting Dro, Dro to multiple cars or multiple people, that's what happened in the Neal case. I believe it was blows in Neal. Then I think there's much less question of whether he's actually soliciting as opposed to, as Justice Freeman said, calling out someone's nickname or that there's an innocent explanation for what he's doing. So whether or not there's a solicitation really could amount to how much traffic was in an area. If one car is passing every 20 minutes and the one car comes by and he says Dro, Dro, it's not a solicitation because there weren't 15 cars behind that car? I think that's a different case, Your Honor. I think that if you have a situation where there's only one conceivable solicitee in the area and the defendant is saying the slang for cannabis to that person, I think that's different. We have other people going by in this case, other cars, pedestrians in the area. There are other people that Mr. Grant isn't interacting with in any way at all. I have a problem with something that Justice McBride wrote in her special concurrence, and maybe you can help me out with that.  And the defendant had shouted it at a passing vehicle. Justice McBride wrote, and here's the quote, although the particular ordinance under which the officers were acting does not require that an unlawful transaction take place, noticeably absent in this case are any facts to suggest that an unlawful transaction had taken place or was about to take place. So I see an acknowledgment that there's no requirement, and then she cites the requirement. What's your position on this? Was this just a, did she misspeak? No, our position is perfectly consistent with that, Your Honor. I think the State is saying that this is a, that it's a completed crime, essentially. Once he says, drow, drow, he has solicited, that's the end of the story. I think the officers have to look at everything that went on in this case, and that's why it is significant here that you don't have any of these classic indicia of drug behavior. Now, in drug cases, whether you're dealing with solicitation, completed possession, or a completed sales situation, there are well-known indicia of criminal behavior that officers, trained officers, know and expect to look for. And we don't have any of that here. We don't have Mr. Grant, you know, completing an exchange of some sort with anyone. But I'm trying to focus on the ordinance, and if the ordinance violation is complete, which she says in the first part of her quote, when the solicitation takes place, then why is probable cause lacking because of a lack of things happening that are not elements of the offense? All that's required is the solicitation, right? That's true, but you have to have an actual solicitation. Here, the lack of these other indicia of drug activity calls into question whether the original statement was an actual solicitation. All right, so would you agree, going back to Justice Carmar's question, that if we discern that dro-dro is basically the same as saying marijuana for sale, end of story, and there's a violation of the ordinance? Not necessarily, Your Honor, because, again, you have to take into account the totality of the circumstances here. Because you have no transactions taking place, no visible drugs or drug paraphernalia. You don't need a transaction, according to the ordinance. That's correct, but the lack of these classic indicia of drug activity that you see in drug cases suggests that whatever Mr. Grant was doing in this situation, he wasn't necessarily really soliciting the sale of cannabis. When you have these things present, just as if you have repetition of the phrase over to additional potential customers, that substantially decreases the likelihood that you're dealing with innocent behavior. I'm going to let you go after this one, but it seems you're saying that you need a transaction to prove that a solicitation took place. No, Your Honor, I'm not saying that. It's not a per se rule that you absolutely need these things to occur. But what I'm saying is when you don't have them, it lessens the likelihood that you're dealing with criminal behavior. Because he's just yelling these two words without any supporting criminal indicia, like the ones I've identified, it calls into question whether he's engaged in actual criminal behavior. And that means that the police, what they should do, is they should investigate further to see whether they're really dealing with actual criminal behavior as opposed to just ambiguous conduct. And that's where the Lee case, this Court's Lee case, is very interesting. Because that's not a completed sale or possession case either. That's a violation of a drug ordinance issue. And yet this Court stressed the lack of indicia of drug activity in finding that despite the officer's subjective belief, like we have in this case, that a crime had been committed or was about to be committed, there was no probable cause. For probable cause, you look at everything that's happening. And when you don't have indicia of drug activity that you would expect to find in an actual drug criminal situation, you're less certain. It's ambiguous. And that's what makes it like the Lee, Marshall, and Rainey cases cited in the briefs. An additional thing needs to be clarified regarding the facts in this case. The counsel stated a couple times that the review here is for manifest way to the evidence. We disagree with that. There was only one finding in this case, and that was that the officer testified credibly. That's not tantamount to finding that Mr. Grant was actually soliciting cannabis here. Had that been the case, the Court could easily have said, I find that that's what happened. It means only that the officer believed that Mr. Grant was soliciting cannabis. Now, it may seem petty, but it's an important distinction because probable cause is an objective inquiry, not a subjective one. And if all you needed was an officer's subjective belief that a crime had been committed, you have probable cause in every case because the arrest otherwise wouldn't have occurred in the first place. And with regard to solicitation, it's also notable that the State's position could potentially dramatically expand the realm of police and citizen encounters. If all you need is the wrong words in the wrong area, and that's probable cause, you're going to increase the number of arrests. As the Neal dissent said, you're going to significantly lower the threshold of probable cause, the language that Justice Burke was mentioning a minute ago. And it's potentially ripe for abuse. If all an officer has to say at any suppression hearing is, I heard him say dro, or I thought I heard him say dro, that would be the end of the story. And without regard to context, without regard to the lack of indicia of criminal behavior, if that's enough for probable cause, it's going to be a major increase in arrests. And accordingly, the State's position should be rejected. The officers should have conducted further investigation here. And there were no exigencies suggesting that they couldn't. If there are no further questions for Your Honors, thank you. And we ask that you affirm the judgment of the appellate court. Thank you very much. Thank you, Mr. McNeil. Ms. Warnock, rebuttal. Thank you. Very briefly, the Neal case to which my opponent refers is not at all actually similar to the case before this court. In Lee, the behavior was an ordinance violation regarding loitering. And what the police observed was ambiguous behavior. And that's the case in many of the cases the defendant cites. In here, the behavior which the defendant exhibited was not ambiguous. He shouted words that were slang for marijuana to a passing vehicle. That is overt, obvious behavior that is not at all ambiguous. With regards to the Neal case and repetition being needed, I believe the counsel is performing an overly simplistic analysis of their case. The importance of Neal and what the appellate court found was not how many times the defendant said the word blow blows. What the appellate court found is that the officer testified credibly that he believed blow blows meant a type of marijuana and that the appellate court found no reason not to follow the ruling of the trial court. And the appellate court should have done the same thing in this case. The Fourth Amendment accepts the fact that there can be possibly innocent explanations for behavior. It accepts that fact. That is not the question before this court. The question before this court is, is there probable cause based on the Chicago Municipal Ordinance? And, in fact, there was. With regard to the standard of review, the officer's testimony equated to historical facts. And those facts must be given deference. The trial court saw the officer testify and he heard his testimony. And those facts are entitled to deference. And the standard is manifestly erroneous. And the trial judge's decision was not manifestly erroneous in this case. The people would, therefore, ask that the trial court's ruling be reinstated and the defendant's conviction be affirmed. Thank you. Thank you. Case number 112734, People v. Grant, is taken under advisement as agenda number one. Mr. Warnick, excuse me, Ms. Warnick and Mr. McNeely, thank you for your arguments today.